Priority ✓
Send ✓
Enter ——
Closed ——
JS-5/JS-6 ✓
JS-2/JS-3 ——
Scan Only ——



FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

EDWIN ROSS,

           Petitioner,

    v.

UNITED STATES OF
AMERICA,

           Respondent,

)
)
)
)
)
)
)
)
)
)
)
)

Case No. EDCV 04-1367 -VAP
EDCR 02-63(A) VAP

**[Petition filed on October 28, 2004]**

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S PETITION**

DOCKETED ON CM

JUL 10 2006

BY _____ 075

## I. BACKGROUND

Petitioner Edwin Ross ("Petitioner") pled guilty to one count of conspiracy to possess with intent to distribute more than 50 grams of a mixture or substance containing cocaine base, in violation of 18 U.S.C. §§ 841(a)(1) and 846 on August 4, 2003. [Transcript of Proceedings, August 4, 2003, ("Tr.") at 33.] On October 29, 2003, Petitioner was sentenced to 188 months, based on an offense level 31 and criminal history category VI. [Government's Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255 ("Opp'n") at 3.]

1   　　　Petitioner filed a 28 U.S.C. § 2255 Petition ("Pet.")
2   on October 28, 2004.   The Petition cites the following
3   grounds of error: (1) Petitioner's sentence was enhanced
4   based on facts neither admitted by Petitioner nor proven
5   to a jury beyond a reasonable doubt, (2) Petitioner's
6   Sixth Amendment rights were violated, (3) Petitioner's
7   Due Process rights were violated, and (4) Petitioner was
8   denied his right to effective assistance of counsel.
9   [Pet. at 5-6.]   On November 12, 2004, Petitioner filed a
10  supplement to his Petition claiming that the Court erred
11  by (1) not permitting Petitioner to plead to the elements
12  of the offense, without admitting the allegations about
13  the drug amount, and (2) failing to use the correct
14  standard of proof in attributing a drug quantity and
15  type.   [Motion to Supplement 28 U.S.C. § 2255 ("Supp.")
16  at 1.]

17

18  　　　Respondent filed an Opposition to Petitioner's
19  Motion Pursuant to 28 U.S.C. § 2255 on December 22, 2004.
20  Respondent asserts that the Petition is premised on
21  Blakely v. Washington, 542 U.S. 296 (2004), which does
22  not apply here because Petitioner's conviction became
23  final before Blakely was decided, and Blakely is not
24  retroactive.   [Opp'n at 3-9.]   Respondent contends that
25  even if Blakely were to apply, the Court did not err in
26  sentencing Petitioner because he admitted to the drug
27  amount during the plea colloquy.   [Id. at 9-12.]

28

1  Petitioner filed a "Motion in Traverse to
2  Government's Reply Brief" ("Traverse") on May 19, 2005.

3

4  At the Court's direction, Respondent filed a
5  Supplemental Opposition ("Supp. Opp'n") on February 28,
6  2006, and Petitioner filed a "Supplemental Brief" ("Supp.
7  Reply") on March 17, 2006.  Petitioner filed another
8  Supplemental Brief on April 26, 2006.

9

10  **II. DISCUSSION**
11  **A.   Enhancement of Sentence Based On a Drug Amount**
12  Grounds one, two, and three of the Petition and the
13  two grounds listed in Petitioner's Supplement to the
14  Petition assert that Petitioner's sentence was enhanced
15  based on his possession of 290 grams of cocaine base,
16  which was neither admitted to by Petitioner, nor found
17  true beyond a reasonable doubt by a jury.  [Pet. at 7.]

18

19  Respondent argues that <u>Blakely</u>, upon which
20  Petitioner's argument is based, is not retroactive.
21  Furthermore, Respondent correctly points out that
22  Petitioner admitted the drug type and amount in his plea
23  colloquy.  [Opp'n at 3-12.]  Below are excerpts from
24  Petitioner's plea colloquy:

25

26  **The Court:**   And furthermore, if the Court accepts
27  your guilty plea, you will be judged

28

3

1                             guilty; in other words, there won't be a

2                             trial in your case.  Do you understand

3                             that?

4

5       **The Defendant:**   Yes.

6

7 [Tr. at 8:15-18.]

8

9       **The Court:**   Do you feel that you understand

10                             everything that's happened here today?

11

12       **The Defendant:**   Yes, I do.

13

14       **The Court:**   Do you feel that you understand the

15                             consequences to you of pleading guilty

16                             to Count 1?

17

18       **The Defendant:**   Yes, I do.

19

20 [_Id._ at 18:20-25.]

21

22       **The Court:**   Mr. Ross, you have the right to have

23                             Count 1 in the Indictment read out loud

24                             to you now.  Do you wish to have Count 1

25                             read to you again?

26

27       **The Defendant:**   Yes.

28

1  **The Court:**    [Assistant United States Attorney] Mr.
2                    Missakian.

3

4  **Mr. Missakian:**    Count 1 reads as follows (reading):

5

6                              "Beginning on a date unknown to
7                              the grand jury and continuing
8                              to in or about March 2002, in
9                              Riverside County, within the
10                             Central District of California,
11                             defendants Sedrick Decoud,
12                             Edwin Herbert Ross, Audra
13                             Israel, and Kendra Trice, along
14                             with co-conspirators Cleo Page,
15                             Nathaniel Robert Larry, and
16                             other known and unknown to the
17                             grand jury, conspired and
18                             agreed with each other to
19                             knowingly and intentionally:

20

21                             "A, possess with [intent] to
22                             distribute, and; B, distribute
23                             more than 50 grams of a mixture
24                             of substance containing a
25                             detectable amount of cocaine
26                             base, in this case, crack, a
27                             Schedule II narcotic drug

28

1                                                  controlled substance, in

2                                                  violation of Title 21 United

3                                                  States Code Section 841(a)(1).

4

5                                                  "The objects of the conspiracy

6                                                  were to be accomplished in

7                                                  substance as follows:

8                                                  Defendant Decoud would supply

9                                                  coconspirator Page with cocaine

10                                               base, crack, for further

11                                              distribution.  Defendants

12                                              Decoud and Ross, along with co-

13                                              conspirator Page, would

14                                              manufacture crack from powder

15                                              cocaine.  Defendant Ross would

16                                              manufacture[] and store cocaine

17                                              base at his residence located

18                                              at . . . .

19

20                                                  "In furtherance of the

21                                                  conspiracy and to accomplish

22                                                  the objects of the conspiracy,

23                                                  defendants Decoud, Ross,

24                                                  Israel, and Trice, along with

25                                                  co-conspirators Page and Larry,

26                                                  and others known and unknown to

27                                                  the grand jury, committed

28

1    various acts on or about the

2    following dates in Riverside

3    County within the Central

4    District of California,

5    including but not limited to

6    the following: . . . .

7

8    "On February 8, 2002, during a

9    telephone conversation using

10   coded language, defendant Ross

11   indicated to co-conspirator

12   Page that he manufactured

13   approximately nine ounces of

14   cocaine base in crack form,

15   left it at his residence

16   located at . . . to be picked

17   up by co-conspirator Page. . .

18   . "

19

20   **The Court:**   Mr. Ross, how do you plead to Count 1 in

21              the Indictment, guilty or not guilty?

22

23   **The Defendant:**   Guilty.

24

25   **The Court:**   Are you pleading guilty because you did

26              in fact do what's alleged in Count 1 of

27              the Indictment?

28

| | |
|---|---|
| 1 | **The Defendant:**   Your Honor, I have a question.  By |
| 2 | pleading guilty to Count 1, which is |
| 3 | the 846 count of conspiracy, I would |
| 4 | like to know is there - will there |
| 5 | still be a hearing to establish a |
| 6 | factual basis in determining the |
| 7 | drug amount in this case on - in |
| 8 | establishing a base offense level? |
| 9 | |
| 10 | **The Court:**   Well, what I'm about to do is to ask Mr. |
| 11 | Missakian to make what we [call] an |
| 12 | "offer of proof."  And that is to state |
| 13 | for the record what the government |
| 14 | believes it would be able to prove |
| 15 | against you if your case went to trial. |
| 16 | |
| 17 | And then I'll ask you whether or not you |
| 18 | agree with what he just said about what |
| 19 | you did in this case. |
| 20 | |
| 21 | If you don't agree with what he says, |
| 22 | you will be able to tell me what you |
| 23 | disagree with or object to.  If you do |
| 24 | agree with what he says, then that will |
| 25 | be the factual basis. |
| 26 | |
| 27 | **The Defendant:**   Okay. |
| 28 | |

1   **The Court:**   Now, Mr. Missakian, does your proposed
2                    factual basis include an amount?  My
3                    recollection of the plea agreement is
4                    that it does.

5

6   **Mr. Missakian:**   It does, Your Honor.

7

8   **The Court:**   Do you understand, Mr. Ross?

9

10  **The Defendant:**   Yes, I do.

11

12  **The Court:**   So by pleading guilty, you are agreeing
13                   to the base amount.

14

15  **The Defendant:**   Your Honor, the reason I asked the
16                       question was because there was no
17                       amount.  There was just a telephone
18                       call.  That was it.  As he indicated
19                       in the plea agreement, as they
20                       stated, it was a coded conversation
21                       telephone call.  So there is no
22                       drugs evidence, period, to establish
23                       a factual basis as far as drug
24                       amount.

25

26                       I'm not contesting the guilty plea
27                       as far as Count 1 of the conspiracy,

28

1        I'm only asking the question based

2        on the factual findings of the nine

3        ounces.

4

5  **The Court:** Mr. Philips, do you want to take a

6        moment and discuss this with your

7        client.

8

9  **Mr. Philips:** I've taken, many, many, many, many,

10        many moments to discuss this with my

11        client.  Your Honor, this is the end

12        result of all those discussions, and

13        I don't know if I can contribute any

14        more to those discussions by having

15        a private talk with my client.

16

17  **The Court:** Well, I suppose all we can do at this

18        point is this - I'm going to ask Mr.

19        Missakian to state the proposed factual

20        basis, and I'm going to ask you whether

21        you agree with it.

22

23        And if you don't, you can tell me you

24        don't.  Or you can tell me what you

25        disagree with.  And if your disagreement

26        means that you are not agreeing to all

27        the elements necessary to prove up the

28

1    charge in this case, then I can't take

2    your guilty plea.

3

4    Mr. Missakian.

5

6    **Mr. Missakian:**   If this case were to go to trial,

7    the government would expect to prove

8    the following (reading):

9

10   "Beginning on a date unknown

11   and continuing to in or about

12   March 2002, defendant and

13   codefendant Sedrick Decoud,

14   Audrea Israel, and Kendra

15   Trice, agreed with each other

16   and with co-conspirators Cleo

17   Page to manufacture and

18   distribute cocaine base in the

19   crack form in the Riverside

20   County area.

21

22   "Defendant and codefendants

23   manufactured, distributed, and

24   sold the cocaine base in the

25   crack form.

26   ///

27   ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"On February 8, 2002, during
the recorded telephone
conversation using coded
language, defendant spoke to
co-conspirator Page and
indicated to him that he had
manufactured approximately nine
ounces of cocaine base in crack
form.

"Defendant further indicated
that he had left the
approximately nine ounces of
cocaine base at his residence
located at . . . to be picked
up by codefendant Page.

"On March 1, 1992, (sic) when
the search warrant was executed
at defendant's residence, law
enforcement discovered, among
other things, a glass Pyrex
containing cocaine base in
crack form, a residue of that;
and a baggie of powdered
cocaine, both of which belonged
to defendant and were used in

1                                    furtherance of the

2                                    manufacturing and distribution

3                                    of cocaine base in the crack

4                                    form.

5

6                                    "Defendant agrees that he is

7                                    responsible for conspiring to

8                                    possess with intent to

9                                    distribute and to distribute

10                                   approximately 290 grams of

11                                   cocaine base, again in crack

12                                   form."

13

14      **Mr. Philips:**      Your Honor, if I can take one moment

15                            with Mr. Ross.

16

17      **The Court:**   The attorney for the government, I

18                       think, wishes to correct one thing he

19                       just stated regarding the date.

20

21      **Mr. Missakian:**   Yes.  There's a typo in the second

22                           to last paragraph.  I referred to

23                           the search warrant being executed on

24                           March 1st 1992, which should be, in

25                           fact, March 1st, 2002.

26  ///

27  ///

28

1   **The Court:**   Thank You.  With that correction, Mr.
2                    Ross, do you agree with what the
3                    attorney for the government just stated
4                    that you did in this case?

5

6   **The Defendant:**   Yes.

7

8   [Id. at 19:7-27:12.]

9

10  **The Court:**   All right.  At this point, then, do you
11                   specifically give up your right to plead
12                   not guilty and to persist in a plea of
13                   not guilty; your right to a speedy and
14                   public trial by jury; your right to see
15                   and hear the evidence; and your right to
16                   cross-examine witnesses who would
17                   testify against you; your right against
18                   self-incrimination; your right to use
19                   the court's subpoena process.

20

21                   And if you are convicted after a trial,
22                   your right to appeal your conviction and
23                   sentence.

24

25                   Do you give up these rights at this
26                   time?

27  ///

28

1          **The Defendant:**    Yes.

2

3    [<u>Id.</u> at 28:12-21.]

4

5          While Petitioner expressed concern about pleading to

6    the drug amount, it is evident from the transcript that

7    he agreed to the factual basis provided by Respondent.

8    The offer of proof specifically stated that "Defendant

9    agrees that he is responsible for conspiring to possess

10   with intent to distribute and to distribute approximately

11   290 grams of cocaine base, again in crack form."  [<u>Id.</u> at

12   26:20-24.]  When asked if he agreed with the Government's

13   offer of proof, Petitioner unequivocally said "yes."

14

15        Petitioner's earlier resistance to admitting the drug

16   amount is immaterial.  The Court thoroughly explained to

17   Petitioner, after hearing his initial question, that if

18   he disagreed with any part of the factual basis, he could

19   explain his disagreements to the Court.  Petitioner

20   stated no disagreement with the factual basis to the

21   Court, and in fact admitted to the drug amount and type

22   in his plea colloquy.

23

24        Petitioner's statements on the record and under oath

25   "carry a strong presumption of verity." <u>United States v.</u>

26   <u>Grewal</u>, 825 F.2d 220, 223 (9th Cir. 1987).  Moreover, a

27   court may credit defendant's testimony at the plea

28

colloquy over a later contrary affidavit.  <u>United States</u>
<u>v. Castello</u>, 724 F.2d 813, 815 (9th Cir. 1984).
Accordingly, the Court credits Petitioner's testimony
during the plea colloquy.

Moreover, even if Petitioner had not admitted to the
drug amount, the Court could have used the drug amount
and type to determine Petitioner's sentence under the
mandatory guidelines because <u>Blakely</u> and <u>United States v.</u>
<u>Booker</u>, 543 U.S. 220 (2005), had yet to be decided.
Petitioner's conviction became final on November 10,
2003, well before <u>Booker</u> and <u>Blakely</u> were decided in 2005
and 2004, respectively.

The Ninth Circuit has held that <u>Blakely</u> does not
apply retroactively to cases on collateral review.[1]  <u>See</u>
<u>Schardt v. Payne</u>, 414 F.3d 1025, 1032-36 (9th Cir. 2005)
(holding that "<u>Blakely</u> did not announce a watershed rule
of criminal procedure" and thus could not be applied
retroactively).  As for the retroactive application of
<u>Booker</u>, the <u>Booker</u> Court indicated that its "holdings –
both the Sixth Amendment holding and [the] remedial
interpretation of the Sentencing Act – must be applied *to*
*all cases on direct review*."  543 U.S. at 268 (emphasis

---

[1]   The Supreme Court, however, has recently granted a
writ of certiorari in <u>Burton v. Waddington</u>, -- U.S. --,
126 S.Ct. 2352 (2006), which concerns the retroactivity
of <u>Blakely</u>.

1 | added).    The Ninth Circuit has explicitly stated,
2 | however, that <u>Booker</u> does not apply retroactively for
3 | cases on collateral review.    <u>United State v. Cruz</u>, 423
4 | F.3d 1119, 1121 (9th Cir. 2005)(concluding that "<u>Booker</u>
5 | is not retroactive, and does not apply to cases on
6 | collateral review where the conviction was final as of
7 | the date of <u>Booker's</u> publication.").    Every circuit that
8 | has considered this issue has concluded that <u>Booker</u> does
9 | not apply retroactively.    <u>See, e.g.</u>, <u>Lloyd v. United</u>
10 | <u>States</u>, 407 F.3d 608, 610 (3d Cir. 2005); <u>Guzman v.</u>
11 | <u>United States</u>, 404 F.3d 139, 141 (2d Cir. 2005);
12 | <u>Humphress v. United States</u>, 398 F.3d 855, 860 (6th Cir.
13 | 2005); <u>McReynolds v. United States</u>, 397 F.3d 479, 481
14 | (7th Cir. 2005); <u>United States v. Price</u>, 400 F.3d 844,
15 | 845 (10th Cir. 2005); <u>Varela v. United States</u>, 400 F.3d
16 | 864, 868 (11th Cir. 2005) (per curiam).
17 |
18 |     With respect to Defendant's <u>Apprendi v. New Jersey</u>,
19 | 530 U.S. 466, 490 (2000), claim:
20 |
21 |     <u>Apprendi</u> requires the government to prove beyond a
22 |     reasonable doubt any fact, other than a prior
23 |     conviction, that exposes the defendant to a greater
24 |     punishment than that authorized by the guilty verdict
25 |     or plea.    Where a defendant claims the district court
26 |     violated <u>Apprendi</u>, we first determine the statutory
27 |     maximum punishment authorized by the guilty [] plea .
28 |

1    . . .  In the case of a guilty plea, the defendant
2    admits guilt beyond a reasonable doubt and it is
3    necessary to examine the substance of the plea to
4    determine the facts to which the defendant has
5    admitted . . . .

6

7    The next step in assessing a claim of _Apprendi_ error
8  is to determine whether the court made any findings that
9  exposed the defendant to a greater statutory maximum
10 punishment than that authorized by the plea.  <u>United
11 States v. Banuelos</u>, 322 F.3d 700, 704-05 (9th Cir. 2003)
12 (citations omitted).  Where a defendant's sentence does
13 not exceed the statutory maximum authorized by his guilty
14 plea, <u>Apprendi</u> is not implicated.  <u>See, e.g.</u>, <u>United
15 States v. Saya</u>, 247 F.3d 929, 942 (9th Cir. 2001); <u>United
16 States v. Hernandez-Guardado</u>, 228 F.3d 1017, 1026-27 (9th
17 Cir. 2000).

18

19    Here, Petitioner pled guilty to a violation of 21
20 U.S.C. §§ 841(a)(1) and 846.  [Tr. at 33:12-13.]  The
21 statutory maximum for this offense is life.  <u>See</u> §
22 841(b)(1)(a)(iii).  Defendant was sentenced to 188 months
23 incarceration, [Judgment and Commitment Order,
24 October 29, 2003, at 1], a sentence less than the
25 maximum.  Accordingly, there was no <u>Apprendi</u> violation.
26 ///
27 ///

28

## B.   Ineffective Assistance of Counsel

Petitioner argues that his lawyer was ineffective because he failed to file an appeal when directed to by Petitioner.  [Pet. at 7.]  Petitioner contends that the Supreme Court has found that it is professionally unreasonable for a lawyer to disregard a client's request to file a direct appeal.  [Traverse at 2 (citing Rodriquez v. United States, 395 U.S. 327 (1969)).]  Petitioner contends that his lawyer's failure to file a notice of appeal violated his right to appeal.  [Id.]

Respondent contends that Petitioner's conclusory statements that his attorney failed to file a notice of appeal after being requested to do so is insufficient to meet Petitioner's burden.  [Supp. Opp'n at 4.]  Respondent argues that Petitioner does not state the "who, what, and where of [the] alleged request."  [Id.]  Respondent also attaches a declaration of David Philips stating he does not specifically remember Petitioner directing him to file a notice of appeal and that based on his customary practices, it is unlikely that he did.  [Id. at 4-5.]

In Rodriquez v. United States, 395 U.S. 327 (1969), the Supreme Court held that when a defense attorney fails to file a notice of appeal, the defendant need not establish that his or her appeal has merit to seek

1 relief. <u>Id.</u> at 330. This precedent, however, was

2 established before the seminal ineffective assistance of

3 counsel case, <u>Strickland v. Washington</u>, 466 U.S. 668

4 (1984).

5

6    In <u>Strickland</u>, the Court established the elements of

7 an ineffective assistance of counsel claim: A petitioner

8 must prove that (1) his "counsel's representation fell

9 below an objective standard of reasonableness,"

10 ("deficient performance") and (2) there is a reasonable

11 probability that, but for his counsel's errors, the

12 result of the proceeding would have been different

13 ("prejudice"). <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 694.   "A

14 reasonable probability is a probability sufficient to

15 undermine confidence in the outcome." <u>Id.</u> at 694.

16

17    The decision in <u>Strickland</u>, however, has not

18 disturbed the long standing precedent set forth in

19 <u>Rodriquez</u>; courts have woven the principles announced in

20 <u>Rodriquez</u> into the <u>Strickland</u> test. <u>See, e.g.</u>, <u>Roe v.</u>

21 <u>Flores-Ortega</u>, 528 U.S. 470, 477 (2000).

22

23    As to the deficient performance factor, the Court in

24 <u>Flores-Ortega</u> held that the failure to file a notice of

25 appeal after being requested to do so always satisfies

26 the deficient performance element of the <u>Stickland</u> test.

27 <u>Id.</u>

28

20

1        We have long held that a lawyer who disregards

2        specific instructions from the defendant to file

3        a notice of appeal acts in a manner that is

4        professionally unreasonable. . . .  This is so

5        because a defendant who instructs counsel to

6        initiate an appeal reasonably relies upon

7        counsel to file the necessary notice.  Counsel's

8        failure to do so cannot be considered a

9        strategic decision; filing a notice of appeal is

10       a purely ministerial task, and the failure to

11       file reflects inattention to the defendant's

12       wishes.

13

14  Id. (citations omitted).

15

16      Additionally, the Ninth Circuit has found that the

17  prejudice prong of the Strickland test is presumed by a

18  defendant's attorney's failure to file a notice of

19  appeal; thus, a petitioner need not establish that he or

20  she was prejudiced by his or her attorney's failure to

21  ///

22  ///

23  ///

24  ///

25  ///

26

27

28

1  file an appeal.[2]  Canales v. Roe, 151 F.3d 1226, 1229

2  (9th Cir. 1998).

3

4          Strickland and Rodriguez together dictate that

5          at the federal level a defendant is relieved of

6          the obligation to specify the issues to be

7          raised on appeal where counsel's failure to file

8          a notice of appeal deprives the defendant of his

9          right to appeal.  In that sense, although

10         Rodriguez does not say it in so many words, the

11         defendant is not required to prove

12         that he was prejudiced by counsel's inadequate

13         performance.

14

15  Id. at 1229.

16

17     Here, Petitioner contends that he instructed his

18  attorney, David Philips, to file a notice of appeal.

19  [Pet. at 7.]  That Petitioner lacks a declaration

20  specifically describing the "who, what, and where of

21  [the] alleged request" is not fatal to his claim.

22  _____

23          [2]  The court also noted that every other federal
    appellate court to address the issue has found some sort
24  of presumed prejudice.  Canales, 151 F.3d at 1230 (citing
    Morales v. United States, 143 F.3d 94, 96-97 (2d Cir.
25  1998); Castellanos v. United States, 26 F.3d 717, 718-19
    (7th Cir. 1994); United States v. Peak, 992 F.2d 39,
26  41-42 (4th Cir. 1993); Bonneau v. United States, 961 F.2d
    17, 18, 22 (1st Cir. 1992); United States v. Davis, 929
27  F.2d 554, 557 (10th Cir. 1991); Estes v. United States,
    883 F.2d 645, 648-49 (8th Cir. 1989)).

28

1  Petitioner states in his Petition that his attorney
2  failed to file a notice of appeal after being requested
3  to do so.  [Id.]  This is sufficient evidence that
4  Petitioner is entitled to relief.  Thus, Petitioner's
5  Petition cannot be said to be "palpably incredible," or
6  "patently frivolous or false."  <u>Blackledge v. Allison</u>,
7  431 U.S. 63, 76 (1977).

8

9       Moreover, Respondent has presented no evidence in
10  rebuttal to Petitioner's allegations; the declaration of
11  David Philips is not sufficient.  [Declaration of David
12  Philips at ¶¶ 2-3.]  Mr. Philips's declaration simply
13  states that he does not remember whether or not
14  Petitioner asked him to file a notice of appeal and then
15  states that it is his normal practice to file an appeal
16  if requested to do so.  [Id.]  These facts do not
17  contradict Petitioner's representations.

18

19       Section 2255 of Title 28 states that "[u]nless the
20  motion and the files and records of the case conclusively
21  show that the prisoner is entitled to no relief, the
22  court shall cause notice thereof to be served upon the
23  United States attorney, grant a prompt hearing thereon,
24  determine the issues and make findings of fact and
25  conclusions of law with respect thereto."  "Evidentiary
26  hearings are particularly appropriate when claims raise
27  facts which occurred out of the courtroom and off the
28

1  record." <u>United States v. Chacon-Palomares</u>, 208 F.3d

2  1157, 1159 (9th Cir. 2000).  A court may only deny a §

3  2255 petition without an evidentiary hearing if

4  petitioner's allegations "either do not state a claim for

5  relief or are so palpably incredible or patently

6  frivolous as to warrant summary dismissal." <u>United</u>

7  <u>States v. Burrows</u>, 872 F.2d 915, 917 (9th Cir. 1989).

8

9       While the Court could order an evidentiary hearing on

10 this issue, it appears that such a hearing would be

11 futile.  The evidence presented at the hearing would be

12 identical to the evidence submitted with this Petition:

13 Petitioner will testify that he requested his attorney,

14 Mr. Philips, to file a notice of appeal and that one was

15 not filed; Mr. Philips will testify that he does not

16 remember whether he was requested to file a notice of

17 appeal by Petitioner, but that it is his normal practice

18 to do so if requested.  Mr. Philips's lack of recall does

19 not suffice to create a genuine issue of fact that would

20 have to be determined at an evidentiary hearing.

21

22      Accordingly, Petitioner has established that he

23 requested Mr. Philips to file a notice of appeal and that

24 no notice of appeal was filed.  Under the <u>Rodriquez</u>

25 precedent, as interpreted in the post-<u>Strickland</u> context

26 ///

27 ///

28

1 by <u>Flores-Ortega</u> and <u>Canales</u>, this is a sufficient

2 showing to entitle Petitioner to relief.[3]

3

4     Moreover, Respondent's assertions that Petitioner has

5 not satisfied the heavy burden normally associated with

6 an ineffective assistance of counsel claim are misplaced.

7 As discussed above, since Petitioner has established that

8 he did in fact request his attorney to file a notice of

9 appeal, the <u>Strickland</u> elements are satisfied.

10 Respondent is attempting to apply the heightened

11 standards associated with the <u>Stickland</u> test to the

12 evidentiary standard for factual allegations.

13 Petitioner, however, as he has done here, need only

14 establish that he requested his attorney to file a

15 notice of appeal by a preponderance of the evidence.

16 <u>Silva v. Woodford</u>, 279 F.3d 825, 835 (9th Cir. 2002)

17

18     Accordingly, the Court finds that, by a preponderance

19 of the evidence, Petitioner's attorney did in fact

20 neglect to file a notice of appeal after being directed

21

22     [3] It is immaterial that in Petitioner's plea

23 agreement Petitioner forfeited his appeal rights to a
significant extent because Petitioner need not show that

24 he was prejudiced by his attorney's deficient
performance. Nevertheless, the Court notes that under

25 the plea agreement, he may only appeal his sentence if it
exceeds the statutory maximum or if the Court departed

26 upward under the sentencing guidelines. [Tr. at 1:14-
24.] Since the Court did not exceed the statutory

27 maximum or depart upward, Petitioner likely has no right
to appeal.

28

to do so, entitling Petitioner to relief.  Petitioner's
sentence is hereby vacated and reentered, thus
reinstating the 10-day deadline under Federal Rule of
Appellate Procedure 4(b) for Petitioner to file a notice
of appeal.  See Rodriguez, 395 U.S. at 332, United States
v. Torres-Otero, 232 F.3d 24, 32 (1st Cir. 2000) ("the
district court is not required to engage in de novo
resentencing, but may instead vacate the initial sentence
and summarily reimpose a sentencing judgment identical in
all respects to the earlier judgment except for the date
of entry."); United States v. Phillips, 225 F.3d 1198,
1201 (11th Cir. 2000); United States v. Prado, 204 F.3d
843, 845 (8th Cir. 2000).  **Petitioner thus has until July
20, 2006, to file his notice of appeal.**  The Court hereby
appoints Darlene M. Ricker for the sole purpose of
preparing and filing Petitioner's Notice of Appeal.  If
Petitioner makes a request within this period, the clerk
of the court will file a notice of appeal on Petitioner's
behalf pursuant to Federal Rule of Criminal Procedure
32(j)(2).

### III. CONCLUSION

For the foregoing reasons, the Court denies
Petitioner's Petition to the extent that it alleges that
the Court erred in sentencing him based upon the drug
amount and type.  The Petition is granted, however, to
the extent that it alleges Petitioner's attorney was

1  ineffective when he failed to file a notice of appeal
2  after being requested to do so.
3
4
5  Dated: July 10, 2006

                                  VIRGINIA A. PHILLIPS
6                               United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27

# NOTICE PARTY SERVICE LIST

**Case No.**   EDCV 04-1367 -VAP          **Case Title**   EDWIN ROSS vs. U.S.A.

**Title of Document**                                                    Order

| | |
|---|---|
| | Atty Sttlmnt Officer |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/ C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | Interpreter Section |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| ✖ | Schnack, Randall (CJA Supervising Attorney) |

| | |
|---|---|
| | Statistics Clerk |
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service - Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

**✖   ADD NEW NOTICE PARTY**
**(if sending by fax, mailing address must also be provided)**

Name:     Darlene M. Ricker

Firm:

Address: *(include suite or floor):*
P.O. Box 2285, Malibu, CA 90265

*E-mail:   dmricker@aol.com

*Fax No.:   310-457-8602

*For Civil cases only

*JUDGE / MAGISTRATE JUDGE (list below):*

Initials of Deputy Clerk